UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL LOEBER DC#895668,

       Plaintiff,

v.                           Case No. 5:09cv402/RS/MD

DEPARTMENT OF CORRECTIONS,
STATE OF FLORIDA, ET AL.

       Defendants.
_____/

### DEFENDANTS DEPARTMENT OF CORRECTIONS, GONZALEZ-TORRES, LEMON AND WAHL'S MOTION TO DISMISS

Defendants, **DEPARTMENT OF CORRECTIONS, DELIANA GONZALEZ-TORRES, PATRICIA LEMON**, and **MARY COLLEEN WAHL,** through counsel, move to dismiss the amended complaint for failure to state a claim. In support, defendants submit the following Memorandum of Law.

### Memorandum of Law

### I.  The Allegations of the Amended Complaint:

Plaintiff, Michael Loeber, is a former inmate of the Florida Department of Corrections. (Amended Complaint, doc. 30 at 2, ¶5.)  Plaintiff was received into the custody of the Department of Corrections in April 2008 from the Leon County Jail. (Amended Complaint, doc. 30 at 4, ¶14.)  Plaintiff was released from the custody of the Department of Corrections on March 5, 2010, and currently resides in Leon County, Florida. (Amended Complaint,doc. 30 at 2, ¶5; at 4, ¶14.)  At the time the original complaint was

1

filed, plaintiff was still in the custody of the Department of Corrections and was housed at Holmes Correctional Institution ("HCI"). (Amended Complaint, doc. 30 at 2, ¶5.) During his incarceration, plaintiff was also housed at Wakulla Correctional Institution ("WCI") for a brief period between late September 2008 through late April 2009. (Amended Complaint, doc. 30 at 2, ¶5; at 4, ¶14.)

Plaintiff has filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging that defendants have failed to properly treat him for his Hepatitis C in violation of his federal rights under the Eighth and Fourteenth Amendments to the United States Constitution, Title II of the Americans With Disabilities Act, and Section 504 of the Rehabilitation Act. Plaintiff also brings a state law claim for negligence against the Florida Department of Corrections. (Amended Complaint, Doc. 30.)

Plaintiff alleges he is 50 years old and suffers from various medical conditions, specifically including Hepatitis-C. (Amended Complaint, Doc. 30 at 4, ¶ 13.) One of the complications of Hepatitis-C is elevated blood ammonia levels. (Id.) Plaintiff claims that while incarcerated with the Florida Department of Corrections at HCI and WCI he was "mistreated medically for his hepatitis-C and related conditions." (Amended Complaint, Doc. 30 at 5, ¶¶ 16-17.) Plaintiff claims that he communicated his condition, including specifically his need for the Hepatitis C

medications interferon and/or ribavirin, on multiple occasions to defendants Andem and Wahl at HCI and defendants Torres and Lemon at WCI, but he was not administered either of the medications. (Id.) Instead, plaintiff alleges he was only issued the medication lactulose to regulate the symptom of elevated ammonia levels, but the underlying Hepatitis C condition was left unmedicated or treated. (Id.)

Plaintiff claims his condition radically deteriorated over the total period of his imprisonment and that the deterioration included substantially elevated ammonia levels in his blood, associated confusion and other brain symptoms, portosystemic encephalopathy, substantial mental and emotional deterioration, and five episodes bordering on hepatic coma. (Amended Complaint, Doc. 30 at 6, ¶ 18.) Plaintiff further alleges that he is in a constant condition of extreme fatigue, with burning eues, tremors bordering on convulsion, inability to writ and perform other similar fine motor skills, and insufficient energy to be gainfully employed. (Id.)

Plaintiff claims that an officer at WCI ignored a medical "pass" approving "light duty and frequent rest" and ordered him out of his bunk outside the dormitory. (Amended Complaint, Doc. 30 at 6, ¶ 19.) Plaintiff also alleges that while at HCI he was attacked and injured by another inmate because the officer on duty in the dormitory was working on a computer rather than monitoring the

dormitory.  (Amended Complaint, Doc. 30 at 7, ¶20.)

Plaintiff asserts that he has suffered severe physical and emotional injuries, mental and physical pain and suffering, loss of the enjoyment of life, bodily injury, lost wages and other remuneration for which he seeks damages from defendants.  (Amended Complaint, Doc. 30 at 9, ¶ 32; at 11, ¶ 44; at 12-13, ¶ 55; at 14, ¶ 62; at 18.)  Plaintiff also seeks equitable relief mandating defendants' obedience to the laws and an injunction permanently enjoining defendants from future violations of the state and federal laws outlined in the complaint.  (Amended Complaint, Doc. 30 at 18.)  Plaintiff further seeks attorney's fees and costs. (Amended Complaint, Doc. 30 at 19.)

**II.  Plaintiff's Exhaustion of Administrative Remedies**:

Department of Corrections' records show that plaintiff only filed two grievances with the Office of the Secretary regarding his medical care while incarcerated.  The first grievance, Log #09-6-02017, was filed with the Office of the Secretary on January 21, 2009. (Defendants' Exhibit A at A3.)  The second grievance, Log #09-6-22583, was filed with the Office of the Secretary on July 21, 2009.  (Id. at A9.)  In each of these grievances, plaintiff contested the denial of interferon treatments that had been recommended by a doctor that plaintiff had seen at the Bond Clinic in Tallahassee, Florida, prior to his arrest in

2007.[1] (Defendants' Exhibit A.)

Both grievances were returned without action because plaintiff failed to properly follow the administrative grievance procedure. As to grievance log #09-6-02017, plaintiff failed to timely file a grievance appeal within 15 calendar days of institutional response as required by Florida Administrative Code Rule 33-103.014(1). (Defendants' Exhibit A at A2.) Plaintiff was specifically advised that there was a receipting process at the institutional level under Florida Administrative Code Rule 33-103.006(9) to assure appeals could be submitted in a timely fashion and noted that plaintiff's failure to avail himself of this receipting process may have contributed to his late filing. (Id.)

The second grievance filed with the Office of Secretary by plaintiff was received on July 21, 2009. (Defendants' Exhibit A at A8) This grievance was filed in non-compliance with Florida Administrative Code Rule 33-103.006 because plaintiff did not attach a copy of the formal grievance at the institutional level and plaintiff was advised that he could not by-pass this step. (Id.) However, plaintiff was given an additional 15 days to resubmit his grievance at the institutional level and was advised to attach a copy of the grievance response authorizing him to do

---

[1]

Nowhere in his grievances does plaintiff raise an issue under the Americans With Disabilities Act or Section 504 of the Rehabilitation Act of 1973.

so. (Id.) While given this second opportunity to grieve this issue, plaintiff failed to follow through as instructed.

**III. Argument:**

    **A. Plaintiff Failed to Properly Exhaust Administrative Remedies and Therefore His Complaint Must Be Dismissed:**

    Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before pursuing a civil rights action:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

    The United States Supreme Court has held that the exhaustion requirement under § 1997e requires "'proper exhaustion,'" such that "a prisoner must exhaust all prescribed administrative remedies available to him. . .before filing a lawsuit to seek judicial redress." Garcia v. Glover, 197 Fed. App'x 866, 868 (11th Cir.2006) (quoting Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). The Supreme Court has repeatedly held that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 918-19, 166 L.Ed.2d 798 (2007) (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Moreover, the PLRA requires

"proper exhaustion," so that the agency addresses the issues on the merits. <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2387-88, 165 L.Ed.2d 368 (2006); see also <u>id.</u>, 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").

In <u>Bryant v. Rich</u>, 530 F.3d 1368 (11th Cir.2008), the Eleventh Circuit held:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense ... is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

<u>Id.</u> at 1374-75 (11th Cir.2008) (quoting <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368-69 (9th Cir.1988)). Therefore, Defendants may properly raise this exhaustion defense in the instant motion to dismiss.

"When motions to dismiss are based on issues not enumerated under Rule 12(b), such as here, then Federal Rule of Civil Procedure 43(c) governs and 'permits courts to hear evidence outside of the record on affidavits submitted by the parties.'" <u>Brown v. Darr</u>, 2010 WL 1416552, at *3 (M.D.Ga.2010) (quoting Bryant, 530 F.3d at 1377 n. 16). Accordingly, "the parties may submit documentary evidence concerning the exhaustion issue and

doing so will not require the conversion of the motion to dismiss into a summary judgment motion." <u>Id.</u>

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the court must first consider the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court must accept, for purposes of the motion, the plaintiff's version of the facts as true. <u>See</u> <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir.2008). "'If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'" <u>Id.</u>

The Florida Department of Corrections has a three-step inmate grievance procedure for all inmates in their custody, which is set forth in Chapter 33-103 of the Florida Administrative Code. <u>Henderson v. Langenbrunner</u>, 2010 WL 1408371, at *4 (M.D.Fla.2010).

> First, an inmate must normally file either an informal grievance or formal grievance depending on the nature of his complaint. Informal grievances are to be filed "within a reasonable time" of the date of the incident. Inmates must file a formal grievance within fifteen days from when the informal grievance was responded to; or, within fifteen days of the date of the incident if the grievance is used to initiate the grievance process. If the inmate's issue is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the Department.

<u>Id.</u> (citations omitted).

In this case, plaintiff failed to properly exhaust his

8

administrative remedies because he failed to comply with the procedural requirements necessary to obtain review from the Office of the Secretary. Although the first grievance was dismissed as untimely, plaintiff was given a second chance with his second grievance in July 2009 to properly complete the process; however, plaintiff failed to follow the explicit instructions given him in the grievance response and he failed to present any further appeals to the Office of the Secretary. Accordingly, plaintiff's complaint must be dismissed.

In response to this motion to dismiss, plaintiff may attempt to claim that (1) because he has been released from custody he no longer is required to exhaust administrative remedies in order to proceed with this action or (2) that the amendment to the complaint after plaintiff's release from incarceration obviates the need for exhaustion. Neither position has merit.

At the time plaintiff brought his complaint, he indisputably was a prisoner. Section 1915e(a) of the Prison Litigation Reform Act provides

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Because (1) plaintiff was a prisoner when he "brought"

his suit, and (2) plaintiff's suit implicates "prison conditions," § 1997e(a) applies and plaintiff was required to exhaust any available administrative remedies before he filed suit." <u>Cox v. Mayer</u>, 332 F.3d 422, 425 (6th Cir. 2003).[2] Moreover, plaintiff's failure to properly exhaust his administrative remedies is not cured by the amendment of the complaint following plaintiff's release under Federal Rule of Civil Procedure 15(d). "[A] procedural rule 'cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one).'" <u>Cox v. Mayer</u>, 332 F.3d at 428, quoting <u>Harris v. Garner</u>, 216 F.3d 970 (11th Cir.2000)(en banc) (declining-under similar circumstances-to apply Rule 15(d) to excuse plaintiff's failure to comply with an analogous provision of the PLRA, § 1997e(e)).

Accordingly, for the foregoing reasons, the complaint must be dismissed.

### B. The Eighth Amendment Deliberate Indifference Claim in Count I Against Defendants Lemon, Wahl, and Gonzalez-Torres:

To prevail on a deliberate indifference claim, the plaintiffs must satisfy both an objective and a subjective inquiry – first, by establishing an objectively serious medical need and

---

[2]

For an extended explanation of why "to bring" means "to file," see <u>Harris v. Garner</u>, 216 F.3d 970, 973-80 (11th Cir.2000)(en banc) (construing a different subsection of the same statute).

second, by demonstrating that the defendants acted with deliberate
indifference to the need.  See Brown v. Johnson, 387 F.3d 1344,
1351 (11th Cir. 2004), citing to Farrow v. West, 320 F.3d 1235,
1243.  Defendants do not dispute that a heart attack is a serious
medical need.  However, to satisfy the subjective element of
deliberate indifference to a serious medical need, plaintiffs must
demonstrate three things; "(1) subjective knowledge of a risk of
serious harm; (2) disregard of that risk; (3) by conduct that is
more than [gross] negligence."  Bozeman v. Orum, 422 F.3d 1265,
1272, citing to Brown v. Johnson, supra, and also Miller v. King,
384 F.3d 1248, 1261 (11th Cir. 2004)(noting, after Farmer v.
Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), that
gross negligence fails to satisfy state-of-mind requirement for
deliberate indifference)(final citation omitted).

    Although Federal Rule of Civil Procedure 8(a)(2) requires
only "a short and plain statement of the claim showing that the
pleader is entitled to relief," in order to satisfy Rule 8,
"[f]actual allegations must be enough to raise a right to relief
above the speculative level . . . [and to] nudge[][the] claims
across the line from conceivable to plausible."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929
(2007).  The Eleventh Circuit has tightened the application of Rule
8 in section 1983 cases where qualified immunity is at issue.  In
such cases, the "heightened pleading standard" applies and "[s]ome

factual detail in the pleadings is necessary." <u>Harper v. Lawrence County, Alabama</u>, 592 F.3d 1227, 1232-33 (11th Cir. 2010), quoting <u>GJR Invs., Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1369, 1367 (11th Cir. 1998); <u>see</u> <u>also</u> <u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008)("under the heightened pleading requirement, the relevant facts must be alleged with some specificity.")

Here the complaint includes a paucity of real factual allegations. Most of the complaint is couched in terms of legal conclusions. There are no direct factual allegations that give notice to the defendants of what actions taken by each of them support the plaintiff's claim that each defendant was deliberately indifferent to plaintiff's medical needs. Plaintiff only generally states that he communicated his condition to the defendants at each of the institutions where he was housed and make known that he wanted treatment with interferon and/or ribavirin. (Amended Complaint, Doc. 30 at 5, ¶¶ 16-17.) Plaintiff then states that he was only given lactulose, although he does not state which if any of the named individual defendants prescribed the lactulose. (<u>Id.</u>) Plaintiff claims that he was medically mistreated for his Hepatitis C condition and that the only medication he received treated only symptoms but not the condition itself. (<u>Id.</u>) Plaintiff also claims the individual defendants "had notice of inadequate custodial, medical, and diagnostic care, and of inappropriate placement of Plaintiff in confinement, and failed to establish or

implement policies to treat Plaintiff's serious medical conditions." (Amended Complaint at 8, ¶ 25.) However, nowhere does plaintiff state how defendants were placed on notice of such claimed deficiencies in care nor does plaintiff provide any factual background on his alleged placement in confinement, the basis for its inappropriateness if true, and the obligations of each individual defendant in this regard. Plaintiff further asserts through general and broad allegations that defendants were deliberately indifferent by (1) depriving plaintiff of the means of assisting in his own health care, (2) by failing to provide necessary therapies, (3) by failing to follow up on indicators for serious health problems, (4) by failing to timely respond to plaintiff's medical needs, (5) by failing to provide timely and necessary medical care, and (6) by failing to permit others to provide timely necessary medical care.[3]

The most that can be gleaned from the complaint is that plaintiff wanted treatment with interferon and/or ribavirin and that defendants (presumably all four individually named defendants of the Department of Corrections) denied that particular course of

---

[3]

There is not a single factual allegation made in the complaint to support any of these broad conclusions, let alone put defendants on notice of the nature of the constitutional claim. Plaintiff fails to (1) specify how each of the defendants allegedly deprived plaintiff of the ability to assist in his own health care, (2) what therapies allegedly denied by each specific defendant, (3) how defendants failed to act that resulted in denial of needed medical services.

treatment and instead only provided plaintiff with the medication lactulose. This series of conclusive allegations appear grounded not in deliberate difference but in a difference of medical opinion. The fact that plaintiff may want this treatment does not mean that the treatment necessarily is medically appropriate.

Since 2002, an interferon treatment involving a combination of pegylated interferon (interferon with polyethylene glycol) and ribavirin has been available for treatment of Hepatitis C. See Bender v. Regier, 385 F.3d at 1135. "Interferon treatment has serious potential side-effects, including nausea, anemia, depression, and decomposition of the liver." Id. "The selection of patients for interferon treatment is highly individualized and depends upon many factors." Id. "Treatment is not appropriate for patients with advanced liver problems such as cirrhosis." Id.

In this case, while plaintiff has alleged that before he was arrested he was a candidate for interferon treatment that does not necessarily provide a basis for claiming that some nine months to a year later his condition is still appropriate for such treatment. As noted above, "[interferon] treatment is not appropriate for patients with advanced liver problems such as cirrhosis." Bender v. Regier, 385 F.3d at 1135. Nowhere does plaintiff allege that any of these medical defendants have determined treatment with interferon and ribavirin is the appropriate course of treatment but then has denied the treatment

or failed to assure the treatment is rendered. What plaintiff appears to allege is that there is a difference of medical judgment on what course of treatment is appropriate.

A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. See Shiflet v. Cornell, 933 F. Supp. 1549 (M.D. Fla. 1996), citing Massey v. Hutto, 545 F.2d 45 (8th Cir. 1976). Whether particular forms of treatment are indicated for an inmate is a matter for medical judgment. See Sult v. Prison Health Services Polk County Jail, 806 F.Supp. 251, 252 (M.D. Fla. 1992). A medical decision not to order such measures does not represent cruel and unusual punishment. Id., citing Estelle v. Gamble (citation omitted). Moreover,

> . . . nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any particular type of treatment. See id. at 327-28. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. Kayser v. Caspari, 16 F.3d 270, 281 (8th Cir. 1994); Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir. 1989).

Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

Even assuming that defendants' medical judgments were grossly negligent, the claim would not rise to the level of a constitutional violation. See Bozeman v. Orum, 422 F.3d 1265, 1272, citing to Brown v. Johnson, supra, and also Miller v. King,

384 F.3d 1248, 1261 (11th Cir. 2004)(noting, after <u>Farmer v.</u> <u>Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), that gross negligence fails to satisfy state-of-mind requirement for deliberate indifference)(final citation omitted).   Accordingly, the claims against defendants Gonzalez-Torres, Wahl, and Lemon must be dismissed or alternatively defendants should be entitled to qualified immunity.[4]

## C.  The Rehabilitation Act and ADA Claims Under Counts II and III:

Counts II and III of the complaint allege violations of the Rehabilitation Act of 1973 (hereinafter "Rehabilitation Act") and the Americans with Disabilities Act (hereinafter "ADA").  Title

---

[4]
"The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." <u>GJR Invs., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1366 (11th Cir. 1998).  Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct "violates 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.' " <u>Id.</u> (alteration in original) (quoting <u>Harlow v.</u> <u>Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity. The court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." <u>Hope v. Pelzer</u>, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted).  The court must also determine whether the constitutional violation was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151.  However, the district court has discretion to determine in what order to address each part. <u>Pearson v. Callahan</u>, 555 U.S. — , 129 S.Ct. 808, 818 (2009).

II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973 and, in fact, the statute specifically provides that "the remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II. 42 U.S.C. § 12133. Under both the ADA and the Rehabilitation Act, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in, or denied benefits of, services, programs, or activities by a public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability.

In Counts II and III, plaintiff generally alleges that he was denied "services and/or programs available to others that could have treated him" and that plaintiff "could have benefitted from therapies and medications to address his serious health condition." (Amended Complaint, doc. 30 at 10-11, ¶¶ 41-42; see similar allegations at 12, ¶¶ 50-51.) He also alleges that the Florida Department of Corrections refused "to accommodate the needs of Plaintiff by failing to provide him the **necessary medical care and treatment** for his condition and then, on one occasion referenced

[in the complaint], demand[ed] that Plaintiff work when he was unable to do so . . . ." (Amended Complaint, doc. 30 at 10, ¶ 40.)(Emphasis supplied.) Plaintiff references a failure to accommodate his needs but nowhere in the complaint does plaintiff identify the accommodation that allegedly was available and could have been provided by the Department of Corrections. Neither does plaintiff allege that he requested this accommodation and was refused. What plaintiff does allege is that he was denied a particular treatment regimen – that is, treatment with interferon and ribavirin – and instead only administered the drug lactulose to regulate the symptoms of elevated ammonia levels associated with the advancement of his Hepatitis C condition.

Assuming for purposes of this motion only that plaintiff is a qualified individual with a disability, plaintiff has failed to demonstrate that he has been excluded from the benefits of medical and diagnostic services due to his disability and has failed to show any discriminatory motive in connection with the delivery of medical services. Furthermore, a careful examination of the complaint reveals that plaintiff's claims are grounded on the adequacy and appropriateness of medical and diagnostic care, which are not actionable under either the Rehabilitation Act or the ADA.

The complaint in this case is largely comprised of boilerplate legal conclusions. There is a paucity of real factual

18

allegations to support the legal claims asserted. There are certainly no factual allegations to support that the denial of treatment with interferon and/or ribavirin was due to discriminatory motives of the defendants or other staff. Plaintiff has alleged nothing more than a disagreement between his own perception of what treatment is necessary for his condition and that of the medical professionals delivering the care.

Neither the ADA nor the Rehabilitation Act create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities. See, e.g., Brown v. Baca, 2010 WL 316475 at *7 (C.D. Cal.), citing Alexander v. Tilton, 2009 WL 464486 at *7 (E.D. Cal., February 24, 2009), Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005)(holding that claims pursuant to the ADA or the Rehabilitation Act "cannot be based on medical treatment decisions"); Grzan v. Charter Hosp. Of Northwest Indiana, 104 F. 3d 116, 121-22 (7th Cir. 1997)("Allegations of discriminatory medical treatment do not fit into the four-element framework required by section 504 [of the Rehabilitation Act].") Plaintiff's claims under the ADA and the Rehabilitation Act are really claims of inadequate medical care and treatment.

Plaintiff asserts that he should have received interferon and ribavirin therapy and that defendants failed to provide timely medical and diagnostic care called for by his health condition.

These claims are related to the adequacy of the treatment afforded plaintiff. Neither Title II of the ADA nor Section 504 of the Rehabilitation Act provide a remedy for inadequate medical treatment. See Breedlove v. Costner, 2010 WL 354024 (W.D. Okla., January 22, 2010), citing Fitzgerald v. Corrections Corporation of America, 403 F.3d 1134, 1144 (10th Cir. 2005)(holding tha the ADA did not provide a remedy because the plaintiff's alleged disability was the reason he was seeking treatment); see also Rashad v. Doughty, 4 Fed. Appx. 558, 560 (10th Cir., January 29, 2001)(unpublished op.)("the failure to provide medical treatment to a disabled prisoner . . . does not constitute an ADA violation"(citations omitted)); Callahan v. Southwestern Medical Center of Lawton, 178 Fed. Appx. 837, 839-40(10th Cir., May 8, 2006)(unpublished op.)(stating that claims relating to medical treatment "are not cognizable under the ADA" (citation omitted)). As pointed out by the district court in Breedlove, supra,

> "[C]ourts have differentiated ADA claims based on negligent medical care from those based on discriminatory medical care." Kiman v. New Hampshire Department of Corrections, 451 F.3d 274, 284 (1st Cir. 2006)(citations omitted). For example, the Tenth Circuit Court of Appeals has explained: "[The ADA and Rehabilitation Act] afford disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities." Moore v. Prison Health Services, Inc., 201 F.3d 448, 1999 WL 1079848, Westlaw op. At 1 (10th Cir. Dec. 1, 1999)(unpublished op.)(citations omitted).

<u>Breedlove</u>, 2010 WL 354024 at *3, n. 16 (W.D. Okla., Jan. 22, 2010).

Finally, plaintiff has wholly failed to demonstrate that there has been any discriminatory motive in the delivery of medical services. Plaintiff presents no allegations that the denial of treatment with interferon and/or ribavirin is discriminatory based upon the disability itself. Further, to the extent that plaintiff believes that his allegations that an officer ignored is medical pass and required him to report to the Captain on the outside yard or that another officer failed to prevent an attack on plaintiff because she was distracted by completing work on the computer are sufficient to demonstrate discriminatory motive, plaintiff's reliance is misplaced. First, it is not clear how these allegations show discriminatory intent based upon plaintiff's disability. Second, isolated acts of negligence of employees do not come within the ambit of discrimination against disabled persons proscribed by the ADA. <u>See</u> <u>Foley v. City of Lafayette,</u> <u>Indiana</u>, 359 F.3d 925, 930 (7th Cir. 2004)(Allegations of individual, isolated instances of employee negligence and not a systemic problem with policies of the city do not constitute a violation of the ADA; isolated acts of negligence by a city employee do not come within the ambit of discrimination against disabled persons proscribed by the ADA because the conduct was neither a willful nor systematic effort on the part of the city to deprive Robert the accommodation due him); <u>see</u> <u>also</u> <u>Moore v.</u>

<u>Curtis</u>, 68 Fed. Appx. 561, 563, 2003 WL 21397865 **2 (6th Cir. 2003)(Moore did not allege or show that the defendants deprived him of any service, program, or activities because of his disability, and his disputes with staff and his inmate assistants resulted in only isolated instances where he missed meals or privileges).[5] The ADA proscribes consistent, systemic discrimination by a covered entity, not isolated instances of employee negligence or improper behavior.

For the reasons cited above, Counts II and III of the complaint must be dismissed.

### D.  The State Law Negligence Claim in Count IV:

Plaintiff brings a state law claim in Count IV against the Florida Department of Corrections.  Plaintiff relies on the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) to justify bringing this claim in federal court.

---

[5]
As noted in the <u>Foley</u> case, a Colorado state court case illustrates this principle.  <u>See</u> <u>Pack v. Ark. Valley Corr. Facility</u>, 894 P.2d 34, 39 (Colo.Ct.App.1995).  In <u>Pack</u>, the plaintiff slipped and fell in the handicapped area of the parking lot while visiting a correctional facility.  <u>Id.</u> at 35.  Along with a negligence claim, the plaintiff alleged that he was disabled and the accumulation of snow and ice in the parking lot violated the ADA by effectively denying him access to the public facility.  <u>Id.</u> at 38.  Applying 28 C.F.R. § 35.133, a regulation with language identical to that in 49 C.F.R. § 37.161(a) and (c), the Colorado court concluded that an isolated instance of alleged negligence by agents of the state-in this case, the failure of prison employees to remove the snow from the parking lot-could not violate the ADA, which was "intended instead to prevent consistent and discriminatory denial of access." <u>Pack</u>, 894 P.2d at 39.

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court...." See, Gamble v. Florida Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986)(citations omitted). Moreover, "this will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C. § 1983...." Gamble, 779 F.2d at 1512.

States and state officials acting in their official capacities are not persons for the purposes of lawsuits brought pursuant to Title 42 U.S.C. § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, n. 10 (1989).  A court shall dismiss a case at any time if the court decides the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B)(iii).

Because the federal claims which confer original jurisdiction to the Court under 42 U.S.C. § 1983 should be dismissed, the Court should decline supplemental jurisdiction and dismiss the state law claim.  See Walker v. Sun Trust Bank of Thomasville, Ga., 2010 WL 165131 at *4 (11th Cir., Jan. 19, 2010)(internal citations omitted)(even if a court possesses subject matter jurisdiction over state law claims by virtue of their close connection to a federal claim, the court may decline to exercise

its jurisdiction over the state law claims where, among other things, the court has dismissed all claims over which it had original jurisdiction).

Additionally, plaintiff's claim should be dismissed because plaintiff has failed to allege or demonstrate that he has complied with the conditions precedent to filing a state law claim for negligence under section 768.28, Florida Statutes. <u>See Wagatha v. City of Satellite Beach</u>, 865 So.2d 620, 622 (Fla. 5th DCA 2004). A plaintiff must plead compliance with the statute, although a general averment will suffice. <u>Motor v. Citrus County Sch. Bd.</u>, 856 So.2d 1054 (Fla. 5th DCA 2003). "Under section 768.28(6), not only must the notice be given before a suit may be maintained, but also the complaint must contain an allegation of such notice.... Where the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice." <u>Menendez v. North Broward Hosp. Dist.</u>, 537 So.2d 89, 91 (Fla.1988). Because plaintiff had failed to either allege or demonstrate that he has complied with the statutory presuit requirements, this the state law claim must be dismissed.

**E. Plaintiff's Claims For Injunctive and Equitable Relief Are Moot**:

Plaintiff's prayer for relief includes requests for equitable and injunctive relief mandating defendants' obedience to the laws cited in the complaint and enjoining defendants from

24

future violations of the state and federal laws cited in the complaint. However, plaintiff's release from incarceration in March 2010 has mooted any claims for equitable and injunctive relief as plaintiff is no longer subject to the custody and control of defendants. See Mann v. McNeil, 360 Fed. Appx. 31 (11th Cir. 2010)(Mann contends that all of the alleged abuse by prison officials stemmed from one initial complaint at his former prison, for which he already received a prison transfer; thus, Mann's current request for declaratory relief in the form of a prison transfer is moot) citing to Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir.2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.").

**F.  The Eleventh Amendment Bars A Complaint for Damages Against Defendants In Their Official Capacities:**

It is not clear whether plaintiff sues defendants in both their individual and official capacities. While plaintiff does include a request for equitable and injunctive relief in the prayer for relief, to the extent that plaintiff is suing defendants in their official capacities for damages, this relief must be denied.

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court...." See, Gamble v. Florida Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1511

(11th Cir. 1986)(citations omitted).  Moreover, "this will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C. § 1983...." <u>Gamble</u>, 779 F.2d at 1512.

States and state officials acting in their official capacities are not persons for the purposes of lawsuits brought pursuant to Title 42 U.S.C. § 1983.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71, n. 10 (1989).  A court shall dismiss a case at any time if the court decides the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B)(iii).

## <u>Conclusion</u>

For the foregoing reasons, defendants McNeil, Gonzalez-Torres, Wahl, and Lemon are entitled to dismissal of the amended complaint.

Respectfully submitted,

**BILL McCOLLUM**
**ATTORNEY GENERAL**


**/s/ Susan A. Maher**
**SUSAN A. MAHER**
**CHIEF ASSISTANT ATTORNEY GENERAL**
**CORRECTIONS LITIGATION**
**FLORIDA BAR NO. 0438359**
OFFICE OF THE ATTORNEY GENERAL
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: susan.maher@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing **DEFENDANTS DEPARTMENT OF CORRECTIONS, GONZALEZ-TORRES, LEMON, AND WAHL'S MOTION TO DISMISS THE AMENDED COMPLAINT** has been furnished electronically through the Court's CM/ECF system to **MARIE A. MATTOX, ESQUIRE**, Marie A. mattox, P.A., 310 East Bradford Road, Tallahassee, Florida 32303, on this ___7th___ day of June, 2010.


/s/ Susan A. Maher
Susan A. Maher