UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**MICHAEL LOEBER DC#895668**,

       Plaintiff,

v.                                        Case No. 5:09cv402/RS/MD

**DEPARTMENT OF CORRECTIONS,
STATE OF FLORIDA, ET AL.**

       Defendants.
_____/

## **DEFENDANTS ANDEM'S MOTION TO DISMISS**

Defendant, **DR. EFIONG ANDEM,** through counsel, moves to dismiss the amended complaint for failure to state a claim. In support, defendant submits the following Memorandum of Law.

### **Memorandum of Law**

### **I. The Allegations of the Amended Complaint**:

Plaintiff, Michael Loeber, is a former inmate of the Florida Department of Corrections. (Amended Complaint, doc. 30 at 2, ¶5.) Plaintiff was received into the custody of the Department of Corrections in April 2008 from the Leon County Jail. (Amended Complaint, doc. 30 at 4, ¶14.) Plaintiff was released from the custody of the Department of Corrections on March 5, 2010, and currently resides in Leon County, Florida. (Amended Complaint, doc. 30 at 2, ¶5; at 4, ¶14.) At the time the original complaint was filed, plaintiff was still in the custody of the Department of Corrections and was housed at Holmes Correctional Institution

1

("HCI"). (Amended Complaint, doc. 30 at 2, ¶5.) During his incarceration, plaintiff was also housed at Wakulla Correctional Institution ("WCI") for a brief period between late September 2008 through late April 2009. (Amended Complaint, doc. 30 at 2, ¶5; at 4, ¶14.)

Plaintiff has filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging that defendants have failed to properly treat him for his Hepatitis C in violation of his federal rights under the Eighth and Fourteenth Amendments to the United States Constitution, Title II of the Americans With Disabilities Act, and Section 504 of the Rehabilitation Act. Plaintiff also brings a state law claim for negligence against the Florida Department of Corrections. (Amended Complaint, Doc. 30.)

Plaintiff alleges he is 50 years old and suffers from various medical conditions, specifically including Hepatitis-C. (Amended Complaint, Doc. 30 at 4, ¶ 13.) One of the complications of Hepatitis-C is elevated blood ammonia levels. (Id.) Plaintiff claims that while incarcerated with the Florida Department of Corrections at HCI and WCI he was "mistreated medically for his hepatitis-C and related conditions." (Amended Complaint, Doc. 30 at 5, ¶¶ 16-17.) Plaintiff claims that he communicated his condition, including specifically his need for the Hepatitis C medications interferon and/or ribavirin, on multiple occasions to defendants Andem and Wahl at HCI and defendants Torres and Lemon at

WCI, but he was not administered either of the medications. (Id.) Instead, plaintiff alleges he was only issued the medication lactulose to regulate the symptom of elevated ammonia levels, but the underlying Hepatitis C condition was left unmedicated or treated. (Id.)

Plaintiff claims his condition radically deteriorated over the total period of his imprisonment and that the deterioration included substantially elevated ammonia levels in his blood, associated confusion and other brain symptoms, portosystemic encephalopathy, substantial mental and emotional deterioration, and five episodes bordering on hepatic coma. (Amended Complaint, Doc. 30 at 6, ¶ 18.) Plaintiff further alleges that he is in a constant condition of extreme fatigue, with burning eyes, tremors bordering on convulsion, inability to writ and perform other similar fine motor skills, and insufficient energy to be gainfully employed. (Id.)

Plaintiff claims that an officer at WCI ignored a medical "pass" approving "light duty and frequent rest" and ordered him out of his bunk outside the dormitory. (Amended Complaint, Doc. 30 at 6, ¶ 19.) Plaintiff also alleges that while at HCI he was attacked and injured by another inmate because the officer on duty in the dormitory was working on a computer rather than monitoring the dormitory. (Amended Complaint, Doc. 30 at 7, ¶20.)

Plaintiff asserts that he has suffered severe physical and emotional injuries, mental and physical pain and suffering, loss of the enjoyment of life, bodily injury, lost wages and other remuneration for which he seeks damages from defendants. (Amended Complaint, Doc. 30 at 9, ¶ 32; at 11, ¶ 44; at 12-13, ¶ 55; at 14, ¶ 62; at 18.) Plaintiff also seeks equitable relief mandating defendants' obedience to the laws and an injunction permanently enjoining defendants from future violations of the state and federal laws outlined in the complaint. (Amended Complaint, Doc. 30 at 18.) Plaintiff further seeks attorney's fees and costs. (Amended Complaint, Doc. 30 at 19.)

## II. **Plaintiff's Exhaustion of Administrative Remedies**:

Department of Corrections' records show that plaintiff only filed two grievances with the Office of the Secretary regarding his medical care while incarcerated. The first grievance, Log #09-6-02017, was filed with the Office of the Secretary on January 21, 2009. (Defendants' Exhibit A at A3.) The second grievance, Log #09-6-22583, was filed with the Office of the Secretary on July 21, 2009. (Id. at A9.) In each of these grievances, plaintiff contested the denial of interferon treatments that had been recommended by a doctor that plaintiff had seen at the Bond Clinic in Tallahassee, Florida, prior to his arrest in

2007.[1]  (Defendants' Exhibit A.)

Both grievances were returned without action because plaintiff failed to properly follow the administrative grievance procedure. As to grievance log #09-6-02017, plaintiff failed to timely file a grievance appeal within 15 calendar days of institutional response as required by Florida Administrative Code Rule 33-103.014(l). (Defendants' Exhibit A at A2.) Plaintiff was specifically advised that there was a receipting process at the institutional level under Florida Administrative Code Rule 33-103.006(9) to assure appeals could be submitted in a timely fashion and noted that plaintiff's failure to avail himself of this receipting process may have contributed to his late filing. (Id.)

The second grievance filed with the Office of Secretary by plaintiff was received on July 21, 2009. (Defendants' Exhibit A at A8)  This grievance was filed in non-compliance with Florida Administrative Code Rule 33-103.006 because plaintiff did not attach a copy of the formal grievance at the institutional level and plaintiff was advised that he could not by-pass this step. (Id.)  However, plaintiff was given an additional 15 days to resubmit his grievance at the institutional level and was advised to attach a copy of the grievance response authorizing him to do

---

[1] Nowhere in his grievances does plaintiff raise an issue under the Americans With Disabilities Act or Section 504 of the Rehabilitation Act of 1973.

5

so. (Id.) While given this second opportunity to grieve this issue, plaintiff failed to follow through as instructed.

**III. Argument**:

**A. Plaintiff Failed to Properly Exhaust Administrative Remedies and Therefore His Complaint Must Be Dismissed**:

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before pursuing a civil rights action:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The United States Supreme Court has held that the exhaustion requirement under § 1997e requires "'proper exhaustion,'" such that "a prisoner must exhaust all prescribed administrative remedies available to him. . .before filing a lawsuit to seek judicial redress." Garcia v. Glover, 197 Fed. App'x 866, 868 (11th Cir.2006) (quoting Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). The Supreme Court has repeatedly held that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 918-19, 166 L.Ed.2d 798 (2007) (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Moreover, the PLRA requires

"proper exhaustion," so that the agency addresses the issues on the merits. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-88, 165 L.Ed.2d 368 (2006); see also id., 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").

In Bryant v. Rich, 530 F.3d 1368 (11th Cir.2008), the Eleventh Circuit held:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense ... is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

Id. at 1374-75 (11th Cir.2008) (quoting Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir.1988)). Therefore, Defendants may properly raise this exhaustion defense in the instant motion to dismiss.

"When motions to dismiss are based on issues not enumerated under Rule 12(b), such as here, then Federal Rule of Civil Procedure 43(c) governs and 'permits courts to hear evidence outside of the record on affidavits submitted by the parties.'" Brown v. Darr, 2010 WL 1416552, at *3 (M.D.Ga.2010) (quoting Bryant, 530 F.3d at 1377 n. 16). Accordingly, "the parties may submit documentary evidence concerning the exhaustion issue and

7

doing so will not require the conversion of the motion to dismiss into a summary judgment motion."  Id.

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the court must first consider the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court must accept, for purposes of the motion, the plaintiff's version of the facts as true.  See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir.2008).  "'If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'"  Id.

The Florida Department of Corrections has a three-step inmate grievance procedure for all inmates in its custody, which is set forth in Chapter 33-103 of the Florida Administrative Code. Henderson v. Langenbrunner, 2010 WL 1408371, at *4 (M.D.Fla.2010).

> First, an inmate must normally file either an informal grievance or formal grievance depending on the nature of his complaint. Informal grievances are to be filed "within a reasonable time" of the date of the incident. Inmates must file a formal grievance within fifteen days from when the informal grievance was responded to; or, within fifteen days of the date of the incident if the grievance is used to initiate the grievance process. If the inmate's issue is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the Department.

Id. (citations omitted).

In this case, plaintiff failed to properly exhaust his

8

administrative remedies because he failed to comply with the procedural requirements necessary to obtain review from the Office of the Secretary. Although the first grievance was dismissed as untimely, plaintiff was given a second chance with his second grievance in July 2009 to properly complete the process; however, plaintiff failed to follow the explicit instructions given him in the grievance response and he failed to present any further appeals to the Office of the Secretary. Accordingly, plaintiff's complaint must be dismissed.

In response to this motion to dismiss, plaintiff may attempt to claim that (1) because he has been released from custody he no longer is required to exhaust administrative remedies in order to proceed with this action or (2) that the amendment to the complaint after plaintiff's release from incarceration obviates the need for exhaustion. Neither position has merit.

At the time plaintiff brought his complaint, he indisputably was a prisoner. Section 1915e(a) of the Prison Litigation Reform Act provides

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Because (1) plaintiff was a prisoner when he "brought"

his suit, and (2) plaintiff's suit implicates "prison conditions," § 1997e(a) applies and plaintiff was required to exhaust any available administrative remedies before he filed suit." Cox v. Mayer, 332 F.3d 422, 425 (6th Cir. 2003).[2] Moreover, plaintiff's failure to properly exhaust his administrative remedies is not cured by the amendment of the complaint following plaintiff's release under Federal Rule of Civil Procedure 15(d). "[A] procedural rule 'cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one).'" Cox v. Mayer, 332 F.3d at 428, quoting Harris v. Garner, 216 F.3d 970 (11th Cir.2000)(en banc) (declining-under similar circumstances-to apply Rule 15(d) to excuse plaintiff's failure to comply with an analogous provision of the PLRA, § 1997e(e)).

Accordingly, for the foregoing reasons, the complaint must be dismissed.

**B. The Eighth Amendment Deliberate Indifference Claim in Count I Against Defendant Andem**:

To prevail on a deliberate indifference claim, the plaintiffs must satisfy both an objective and a subjective inquiry – first, by establishing an objectively serious medical need and

---

[2] For an extended explanation of why "to bring" means "to file," see Harris v. Garner, 216 F.3d 970, 973-80 (11th Cir.2000)(en banc) (construing a different subsection of the same statute).

second, by demonstrating that the defendants acted with deliberate indifference to the need.  See Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), citing to Farrow v. West, 320 F.3d 1235, 1243.  Defendant does not dispute that a heart attack is a serious medical need.  However, to satisfy the subjective element of deliberate indifference to a serious medical need, plaintiffs must demonstrate three things; "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."  Bozeman v. Orum, 422 F.3d 1265, 1272, citing to Brown v. Johnson, supra, and also Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004)(noting, after Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), that gross negligence fails to satisfy state-of-mind requirement for deliberate indifference)(final citation omitted).

The complaint presents only a paucity of real factual allegations.  Most of the complaint is couched in terms of legal conclusions.  There are no direct factual allegations that give notice to defendant of what actions taken by him support the plaintiff's claim that defendant was deliberately indifferent to plaintiff's medical needs. Plaintiff only generally states that he communicated his condition to "the defendants" at each of the institutions where he was housed and made known that he wanted treatment with interferon and/or ribavirin.  (Amended Complaint, Doc. 30 at 5, ¶¶ 16-17.)  Plaintiff then states that he was only

11

given lactulose, although he does not state which if any of the named individual defendants prescribed the lactulose. (Id.) Plaintiff claims that he was medically mistreated for his Hepatitis C condition and that the only medication he received treated only symptoms but not the condition itself. (Id.) Plaintiff also claims the individual defendants "had notice of inadequate custodial, medical, and diagnostic care, and of inappropriate placement of Plaintiff in confinement, and failed to establish or implement policies to treat Plaintiff's serious medical conditions." (Amended Complaint at 8, ¶ 25.) However, nowhere does plaintiff state how defendant was placed on notice of such claimed deficiencies in care nor does plaintiff provide any factual background on his alleged placement in confinement, the basis for its inappropriateness if true, and the obligations of defendant in this regard. Plaintiff further asserts through general and broad allegations that defendant was deliberately indifferent by (1) depriving plaintiff of the means of assisting in his own health care, (2) by failing to provide necessary therapies, (3) by failing to follow up on indicators for serious health problems, (4) by failing to timely respond to plaintiff's medical needs, (5) by failing to provide timely and necessary medical care, and (6) by failing to permit others to provide timely necessary medical care.[3]

---

[3] There is not a single factual allegation made in the complaint to support any of these broad conclusions, let alone put

The most that can be gleaned from the complaint is that plaintiff wanted treatment with interferon and/or ribavirin and that defendant (and presumably all four individually named defendants of the Department of Corrections) denied that particular course of treatment and instead only provided plaintiff with the medication lactulose. This series of conclusive allegations appear grounded not in deliberate difference but in a difference of medical opinion. The fact that plaintiff may want this treatment does not mean that the treatment necessarily is medically appropriate.

Since 2002, an interferon treatment involving a combination of pegylated interferon (interferon with polyethylene glycol) and ribavirin has been available for treatment of Hepatitis C. See Bender v. Regier, 385 F.3d at 1135. "Interferon treatment has serious potential side-effects, including nausea, anemia, depression, and decomposition of the liver." Id. "The selection of patients for interferon treatment is highly individualized and depends upon many factors." Id. "Treatment is not appropriate for patients with advanced liver problems such as cirrhosis." Id.

In this case, while plaintiff has alleged that **before he**

---

defendants on notice of the nature of the constitutional claim. Plaintiff fails to (1) specify how each of the defendants allegedly deprived plaintiff of the ability to assist in his own health care, (2) what therapies allegedly denied by each specific defendant, (3) how defendants failed to act that resulted in denial of needed medical services.

**was arrested and placed in county jail in April 2008** he was a candidate for interferon treatment that does not necessarily provide a basis for claiming that some nine months to a year later in March 2009 when he was transferred into the custody of the Department of Corrections his condition was still appropriate for such treatment. As noted above, "[interferon] treatment is not appropriate for patients with advanced liver problems such as cirrhosis." Bender v. Regier, 385 F.3d at 1135. Nowhere does plaintiff allege that any of these medical defendants have determined treatment with interferon and ribavirin is the appropriate course of treatment but then has denied the treatment or failed to assure the treatment is rendered. What plaintiff appears to allege is that there is a difference of medical judgment on what course of treatment is appropriate.

A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. See Shiflet v. Cornell, 933 F. Supp. 1549 (M.D. Fla. 1996), citing Massey v. Hutto, 545 F.2d 45 (8th Cir. 1976). Whether particular forms of treatment are indicated for an inmate is a matter for medical judgment. See Sult v. Prison Health Services Polk County Jail, 806 F.Supp. 251, 252 (M.D. Fla. 1992). A medical decision not to order such measures does not represent cruel and unusual punishment. Id., citing Estelle v. Gamble (citation omitted). Moreover,

> . . . nothing in the Eighth Amendment prevents prison doctors from exercising their

14

> independent medical judgment. <u>White v. Farrier</u>, 849 F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any particular type of treatment. See <u>id.</u> at 327-28. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. <u>Kayser v. Caspari</u>, 16 F.3d 270, 281 (8th Cir. 1994); <u>Taylor v. Turner</u>, 884 F.2d 1088, 1090 (8th Cir. 1989).

<u>Long v. Nix</u>, 86 F.3d 761, 765 (8th Cir. 1996).

Even assuming that defendant's medical judgments in this matter were grossly negligent, the claim would not rise to the level of a constitutional violation. See <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1272, citing to <u>Brown v. Johnson</u>, <u>supra</u>, and also <u>Miller v. King</u>, 384 F.3d 1248, 1261 (11th Cir. 2004)(noting, after <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), that gross negligence fails to satisfy state-of-mind requirement for deliberate indifference)(final citation omitted). Accordingly, the claims against defendant Andem must be dismissed or alternatively defendant should be entitled to qualified immunity.[4]

---

[4] "The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." <u>GJR Invs., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1366 (11th Cir. 1998). Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct "violates 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" <u>Id.</u> (alteration in original) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396

**C. Plaintiff's Claims For Injunctive and Equitable Relief Are Moot**:

Plaintiff's prayer for relief includes requests for equitable and injunctive relief mandating defendants' obedience to the laws cited in the complaint and enjoining defendants from future violations of the state and federal laws cited in the complaint. However, plaintiff's release from incarceration in March 2010 has mooted any claims for equitable and injunctive relief as plaintiff is no longer subject to the custody and control of defendants. See Mann v. McNeil, 360 Fed. Appx. 31 (11th Cir. 2010)(Mann contends that all of the alleged abuse by prison officials stemmed from one initial complaint at his former prison, for which he already received a prison transfer; thus, Mann's current request for declaratory relief in the form of a prison transfer is moot) citing to Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir.2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.").

---

(1982)). The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity. The court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted). The court must also determine whether the constitutional violation was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151. However, the district court has discretion to determine in what order to address each part. Pearson v. Callahan, 555 U.S. —, 129 S.Ct. 808, 818 (2009).

16

**D. The Eleventh Amendment Bars A Complaint for Damages Against Defendant In His Official Capacities:**

It is not clear whether plaintiff sues defendant in both his individual and official capacities. While plaintiff does include a request for equitable and injunctive relief in the prayer for relief, to the extent that plaintiff is suing defendant in his official capacities for damages, this relief must be denied.

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court...." See, Gamble v. Florida Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986)(citations omitted). Moreover, "this will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C. § 1983...." Gamble, 779 F.2d at 1512.

States and state officials acting in their official capacities are not persons for the purposes of lawsuits brought pursuant to Title 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, n. 10 (1989). A court shall dismiss a case at any time if the court decides the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B)(iii).

## Conclusion

For the foregoing reasons, defendant Andem is entitled to dismissal of the amended complaint.

Respectfully submitted,

**BILL McCOLLUM**
**ATTORNEY GENERAL**


**/s/ Susan A. Maher**
**SUSAN A. MAHER**
**CHIEF ASSISTANT ATTORNEY GENERAL**
**CORRECTIONS LITIGATION**
**FLORIDA BAR NO. 0438359**
OFFICE OF THE ATTORNEY GENERAL
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: susan.maher@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing **DEFENDANT ANDEM'S MOTION TO DISMISS THE AMENDED COMPLAINT** has been furnished electronically through the Court's CM/ECF system to **MARIE A. MATTOX, ESQUIRE**, Marie A. mattox, P.A., 310 East Bradford Road, Tallahassee, Florida 32303, on this __12th__ day of July, 2010.

/s/ Susan A. Maher
Susan A. Maher