# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

**MICHAEL J. LOEBER,**

   **Plaintiff,**        **Case No. 5:09cv402-RS/MD**

**v.**

**DEPARTMENT OF CORRECTIONS,**
**STATE OF FLORIDA, LARRY CAMPBELL,**
**in his official capacity as Sheriff, Leon**
**County, Florida, PRISON HEALTH SERVICES,**
**INC., DELIANA GONZALEZ TORRES, M.D.,**
**individually, ERIONG OKON ANDEM, M.D.,**
**individually, MARY COLLEEN WAHL, ARNP,**
**individually, and PATRICIA LEMON, ARNP,**
**individually,**

   **Defendants.**

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT[1]

   Plaintiff MICHAEL J. LOEBER, through his counsel, hereby files his Response

in Opposition to Defendants' Motion to Dismiss Amended Complaint, and states:

---

[1]    This Response is one page over the page limit permitted by the Local Rules of this Court. Plaintiff tried to consolidate his arguments but was unable to reduce them any further than reflected herein. Defendant's Motion exceeded the page limit by one page without objection from Plaintiff and he respectfully requests that this Court accept this Response as being one page over the page limit.

# I.  INTRODUCTION AND FACTS

This is an action brought by Plaintiff Michael Loeber ("Loeber" or "Plaintiff") against multiple defendants largely based on the withholding of necessary medical treatment during his incarcerations at the Leon County Jail ("LCJ"), the Wakulla Correctional Institute ("WCI"), and the Holmes Correctional Institute ("HCI") (Amended Complaint, ¶¶ 5, 14-20).

Plaintiff suffers from Hepatitis-C.  In the Affidavit filed as Exhibit 1, and in Exhibits A-G referenced therein, Plaintiff has documented that he religiously and meticulously followed the procedures for administrative grievance and appeal, while housed at both WCI and HCI. His grievance history summarized in the paragraphs to follow, supported by copies of grievance documents and responses, demonstrate complete exhaustion of administrative remedies, the rather obvious actions of Defendant DOC through its employees and representatives to thwart such exhaustion, and Plaintiff's good faith efforts to comply with all of the procedures in the PLRA.

Preliminarily, at all times pertinent to this action, Plaintiff has suffered from Hepatitis-C, had prior knowledge of his need for medication- specifically interferon and ribavirin, communicated such knowledge to the Defendants, but was never given either medicine. [Amended Complaint, ¶¶ 13, 16, 17].  Instead of the medicines he needed, Plaintiff was administered lactulose. [Id., ¶¶ 16, 17].

While housed at WCI, Plaintiff submitted a series of grievances referenced by Defendants under Log #09-6-02017. [See Doc 33, p. 4].  Prior to the document referenced

by the Defendant as "Log #09-6-02017" [Doc 33, pgs. 4], Plaintiff filed the documents included in Exhibit A, filed herewith, which include: an "informal grievance" dated November 17, 2008, a "formal" or "institutional grievance" dated December 12, 2008, and a "formal appeal" of the response denying such formal grievance dated January 16, 2009. [Loeber Affidavit, ¶ 6]. His appeal was denied as untimely because, according to the Defendant DOC, "the appeal must be received in the Office of the Secretary within fifteen days of the institutional response."

Addressing such denial, Plaintiff maintains that each and every time he received an institutional response denying a formal grievance, he proceeded to prepare and submit an appeal to the DOC Secretary, either the very day he received the institutional response, or the following day. [Id.,¶ 7] Specific to the appeal to the Secretary of his WCI grievance, Plaintiff remembers having noticed that in mid-January 2009, he received a response signed by Dr. Torres and by the Assistant Warden in mid-December, 2008, that such delayed receipt was common, and that did not worry him as he understood that the fifteen-day period for appealing to the Secretary began to run when he received an institutional response, not when it was signed. [Loeber's Affidavit, Exhibit 1, ¶ 8]. He was thus timely as to the WCI grievances and appeals to the DOC Secretary.

Things were worse administratively at HCI, as none of the four formal/ institutional grievances he submitted there was ever acted upon, returned nor responded to. [Id., ¶¶ 11, 15, 18, 20]. With the first of the four grievances, ultimately bearing appeal Log #09-6-20644, [see Exhibit C hereto, not mentioned by the Defendants in their

Motion to Dismiss], that appeal was returned "for being in non-compliance with Chapter 33-103, Fla. Admin. Code, you did not provide this office with a copy of the institution's response to a formal grievance filed at the institutional level". [Id., ¶ 10]. Further, while that response granted Plaintiff an additional fifteen days to cure the deficiency, because Plaintiff never received an institutional response from the HCI warden (and was not permitted to copy his institutional submissions), he had nothing to add and thus could not refile with the DOC Secretary within those fifteen days. [Plaintiff's Affidavit, Exhibit 1, ¶¶ 11, 12].

Further, while Plaintiff was not aware of it at the time such appeal was denied, he was later informed (in response to his subsequent appeal bearing Log #09-6-25622) that his institutional grievance in connection with appeal #09-6-20644 was "inadvertently forwarded to [the DOC Secretary's] office in error". [Id., ¶ 13]. Thus, at the exact same time Defendant DOC was denying Plaintiff's appeal and "offering" him fifteen additional days to cure by supplementing documents he didn't have (and could not have had because the Warden at HCI never responded), DOC itself had in its possession the original of Plaintiff's institutional grievance, the very possession of which also evidenced the HCI warden's absence of a response. Then, instead of clipping one document (the "inadvertently forwarded" institutional grievance) to another (the naked appeal), DOC "offered" Plaintiff fifteen days to produce a document it knew he didn't have! [Id., ¶ 13].

Addressing the second HCI appeal, Exhibit D hereto, referenced by these Defendants under Log #09-6-22583 [Doc 33, pg. 4], Plaintiff was able to obtain a copy of

his informal grievance dated July 9, 2009 (although he was not able to obtain a copy of the associated formal grievance), and of his formal appeal dated July 16, 2009. [Id., ¶ 14]. Again the appeal was denied ("returned without action"), "for being 'in non-compliance with Chapter 33-103.006... You did not provide this office with a copy of the formal grievance filed at the institutional level.'" [Id.]. Again, Plaintiff remembers both submitting such a formal grievance (following the informal grievance he managed to retain), and also receiving neither a response nor verification of receipt of such formal grievance. [Id., ¶ 15].

Plaintiff's third HCI appeal dated July 18, 2009, [see Exhibit E hereto], was never (to Plaintiff's knowledge) assigned a log number [id., ¶ 16], and is also not mentioned in Defendants' Motion, Doc 33. Plaintiff submitted–and made a copy of–a handwritten recitation of July 15, 2009, setting forth from memory the content of his earlier related informal grievance. [Id.]. Having submitted that appeal on DOC Form No. DC6-236 [rather than the correct Form No. DC1-303], that appeal was "received back unanswered Thursday July 23, 2009," and generated a memorandum from the DOC through R. Padgham admonishing Plaintiff to "use proper forms when submitting a grievance" [Id.].

As for the third HCI appeal, Plaintiff states that he asked a "law clerk" on duty at HCI for the proper form for an appeal to the Secretary, [and] on that occasion he couldn't locate one, went in to see the DOC officer in charge of the library for advice, and upon exiting that officer's office handed [Loeber] a blank form DC6-236 with the instructions

'this will work.'" [Id., ¶ 18].  This appeal was submitted but not acted upon by HCI. [Id., ¶ 19].

In connection with his fourth and final HCI appeal, Exhibit F hereto, bearing Log #09-6-25622 and again not mentioned by the Defendants in their Motion [Doc 33], that appeal was "returned without action" with the notation "your time frame to grieve this disciplinary report has expired".  [Id., ¶ 19].  More specifically, in addition to being the "response" that informed Plaintiff that DOC had "inadvertently" received the institutional grievance associated with his earlier appeal, the response to appeal #09-6-25622 evidenced that someone at DOC understood that such appeal was a procedurally errant follow-up of appeal #09-6-20644 rather than a separate appeal of a separate institutional grievance.

Significantly, in his appeal #09-6-25622, Plaintiff told DOC that he had submitted both informal and formal grievances to HCI, which grievances were neither acted upon, returned nor responded to, and of which he was not able to make copies. [Id., ¶ 20].  Focusing solely on HCI, Plaintiff never received a response to, nor even a confirmation of receipt of, any of the four institutional grievances submitted to therein to the HCI warden.

Finally, out of pure frustration, Plaintiff submitted one last "global appeal" to the DOC Secretary, dated December 1, 2009, Exhibit G hereto.  Not surprisingly, that too received no response [Id., ¶ 21].

## II.  STANDARD FOR MOTION TO DISMISS

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  The Supreme Court has clarified that to satisfy Rule 8, "factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[F]actual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" must be pled. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  Plaintiff has satisfied his burden.

## III.  THE PLRA DOES NOT BAR PLAINTIFF'S CLAIMS

A.      Plaintiff Exhausted all Administrative Remedies

In Kozuh v. Nichols, 185 Fed.Appx. 874 (11th Cir. 2006), the Eleventh Circuit set forth the grievance requirements set forth in the Florida Administrative Code, articulating a three-step procedure for most grievances and a two-step procedure for the medical grievances at issue, as follows:

> In Florida, the grievance process consists of a three-step procedure.  An inmate must first file an "informal grievance to the staff member who is responsible in the particular area of the problem."  Fla. Admin. Code § 33-103.005(1).  The second step requires the inmate file a formal grievance with the warden.  Id. § 33-103.006(1)(a).  If the inmate is unsuccessful at this point, he may submit an appeal to the Secretary of the DOC.  Id. § 33-103.007.

> Medical grievances require only a two-step procedure: the inmate must file a formal grievance at the institutional level with the chief health officer.  If the

inmate is unsuccessful, he may file an appeal with the Secretary.  Id. § 33-103.008.

Kozuh, 185 Fed.Appx. at 877 (footnote omitted).

In the instant case, Plaintiff properly submitted at the institutional level and through appeal to the DOC Secretary five different grievances, all pertinent to the treatment and medication for his Hepatitis-C. [See Introduction and Statement of Facts, *supra*, and Loeber Affidavit, filed as Exhibit 1, passim].  While the appeal of Plaintiff's WCI grievance bearing Log #09-6-02017 was denied because "the appeal must be received in the Office of the Secretary within fifteen days of the institutional process," the timing of Plaintiff's appeal was due entirely to DOC, through its employees and agents, not having delivered WC's response to Plaintiff's institutional grievance until after the running of those fifteen days.  There are no other actions required by Plaintiff with respect to WCI.

Similarly, the appeal of Plaintiff's HCI grievance bearing Log # 09-6-20644 was denied based on his failure to attach "the institution's response to a formal grievance filed at the institutional level."  While the response to such appeal granted Plaintiff fifteen additional days within which to attach such institutional response, he could never obtain such a response, and thus had nothing to supplement during those fifteen days.  Further, and unbeknownst to Plaintiff at that time, at the very moment DOC's Bureau of Grievance Appeals was denying this appeal for failure to attach "the institution's response," it had in its possession, the related institutional grievance earlier submitted by

Plaintiff, which showed that HCI failed to respond to his grievance. There was no other appeal available to Plaintiff after that response.

The appeal of Plaintiff's second HCI grievance, and third overall, bearing Log #09-6-22583, was denied for failure to "provide this office with a copy of the formal grievance filed at the institutional level." While Plaintiff specifically remembers submitting such a grievance, he was not permitted to make a copy for himself, never received any response thereon from the Warden, and thus had nothing to attach to his appeal. In any event, he had once again exhausted all available administrative remedies.

Plaintiff's appeal of July 18, 2009, to his knowledge unnumbered, may or may not be deemed to have satisfied the exhaustion requirement. Given his good faith efforts, and inability to obtain Form No. DC1-303 from the library at HCI, plus the communication from the DOC officer in charge of the HCI library through an inmate-law clerk about Form No. CD6-236 working in its place, it is Plaintiff's position that he also exhausted administrative remedies with regard to this appeal as he filed the appeal on the only form available that was provided to him through a law clerk at the direction of a DOC officer.

Lastly, Plaintiff's appeal bearing Log #09-6-25622 appears to have been understood as a procedurally errant follow-up of earlier appeal #09-6-20644, submitted without the institution's grievance response, and was denied as untimely. That said, notwithstanding Plaintiff having in fact timely submitted a new institutional grievance (as earlier instructed), which institutional grievance–if returned– would serve to make timely

appeal #09-6-25622, once again Plaintiff fully exhausted the administrative remedies available to him.

     B.    <u>Plaintiff's Attempts to Comply with the PLRA were Thwarted<br>        by DOC and thus, his Failure to Exhaust is Excused</u>

In the event this Court finds that Plaintiff somehow failed to satisfy the PLRA exhaustion requirement, the PLRA and cases in every jurisdiction that has addressed the issue make clear that Plaintiff was only obligated to exhaust administrative remedies actually "available" to him, and that he could not be required to exhaust theoretical remedies made unavailable to him by Defendants (or for that matter, by anyone else). This was stated most succinctly in <u>Miller v. Norris</u>, 247 F.3d 736 (8th Cir 2001), on facts precisely like those at bar in which a plaintiff alleged in detailed and nonconclusory fashion that his non-exhaustion was due to the fact that <u>the Department of Corrections would not provide the forms he requested for filing a grievance</u>.  Vacating dismissal, the court held as follows:

> . . . Mr. Miller alleged facts... that may establish compliance with the statutory exhaustion requirement.  The statute provides that "no action shall be brought with respect to prison conditions under section 1983 by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted";  see s. 1997e(a).  This provision does not require exhaustion of *all* remedies; it requires the exhaustion of "such administrative remedies as are available."  Although the PLRA does not provide a definition, the plain meaning of the term "available" is "capable of use for the accomplishment of a purpose; immediately utilizable, accessible";  see Webster's Third New International Dictionary.

> We believe that a remedy that prison officials prevent a prisoner from "utilizing" is not an "available" remedy under § 1997e(a), and that Mr. Miller's allegations

raise an inference that he was prevented from utilizing the prison's administrative remedies.

Miller, 247 F.3d at 740 (emphasis in original and citations to authority omitted).

The Eleventh Circuit recognized this obvious and essential defense, labeling it with the word "thwarted," in Kozuh, *supra*, and applied it two years later in Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). In Turner, after alleging his satisfaction of the grievance procedures in effect at Men's State Prison in Hardwick, Georgia, the plaintiff further alleged that "[Warden] Meadows then tore up Turner's [administrative] complaint in front of him," Turner, 541 F.3d at 1081, the functional equivalent of the averment at bar that Plaintiff's myriad of formal grievances at HCI were "neither acted upon, returned nor responded to." [See Introduction and Statement of Facts, *infra*.] In Turner, the Eleventh Circuit held:

> We reject the defendants' arguments that Turner was required to file an additional grievance or to seek leave to file an out-of-time grievance. Turner alleges that he properly filed his formal grievance but that Warden Meadows tore it up. Nothing in [Georgia] SOP IIB05-0001, the applicable prison regulation, requires an inmate to grieve a breakdown in the grievance process. Nor does anything in the SOP require an inmate to seek leave to resubmit the same grievance to the same official who destroyed the evidence when it was properly filed as a matter of right. The PLRA requires that inmates exhaust their available administrative remedies. 42 U.S.C. § 1997e(a). It does not require inmates to craft new procedures when prison officials demonstrate... that they will refuse to abide by the established ones [citation omitted].

Turner, 541 F.3d at 1083.

In the event one or more of Plaintiff's five administrative grievances on treatment and medication of his Hepatitis-C were deemed by this Court to have been aborted short

of exhaustion, the facts surrounding any such failure of exhaustion surely evidence that Plaintiff was thwarted from exhausting the required remedies. For appeal #09-6-02017 from Plaintiff's WCI grievance, if the untimeliness of Plaintiff's response were deemed a failure or exhaustion, self-evidently, such untimeliness was due to one thing and one thing only: the failure of the WCI warden and his staff to deliver their response to Plaintiff's institutional grievance within fifteen days of its signing.

For appeal #09-6-20644, in the event Plaintiff's failure to attach a document he never received was deemed a failure of exhaustion, DOC's undisputed actions on this appeal provide the clearest evidence of thwarting imaginable. That is, at the very moment it was denying Plaintiff's appeal for failure to attach the HCI warden's response to his earlier institutional grievance, DOC's Bureau of Grievance Appeals actually <u>had that institutional grievance it its possession,</u> <u>thus guaranteeing that no response could have come</u> from HCI's warden!

For appeal #09-6-22583, should denial for failure to "provide this office with a copy of the formal grievance" be deemed a failure of exhaustion, the reason that Plaintiff did not provide that copy is that the HCI warden simply did not respond to Plaintiff's institutional grievance thus the quintessential "thwarting" under the law.

For Plaintiff's unnumbered appeal dated July 18, 2009, which was received back unanswered Thursday July 23, 2009, the failure to locate a proper form for appeal by the DOC officer in charge of the library at HCI, coupled with that officer having communicated to Plaintiff through an inmate-law clerk that "this will work" (in

connection with the wrong form), constitutes rather obvious thwarting of the proper completion of Plaintiff's appeal.

Lastly, for appeal #09-6-25622, should this Court determine return thereof by the DOC as untimely as a failure of exhaustion, the facts explained above again involving an absence of any response at the institutional level, which led DOC's Bureau of Grievance Appeals to treat the appeal as an untimely follow-up of an earlier grievance and appeal, once again constituted an act thwarting Plaintiff's good faith efforts to exhaust administrative remedies (and through those remedies, to obtain the medication he needed).

That said, nowhere in the PLRA, the Florida Administrative Code, any case authority or even these Defendants' motion papers is it even suggested that a plaintiff must exhaust administrative remedies five different times. At bar, Plaintiff either exhausted five times, or the number of times he exhausted and the number of times he was truly thwarted sums to five. One exhaustion is enough to avoid dismissal; five shows incredible patience and fortitude.

C.     <u>The Filing of an Amended Complaint Absolved Plaintiff of Complying with the Conditions Precedent in the PLRA</u>

On pages 10 and 11 of their Motion [Doc 33], Defendants correctly anticipate Plaintiff's argument that in the event that he is found not to have properly exhausted the administrative remedies under the PLRA, that the filing of an amended complaint, post release, means that he PLRA no longer applies.

13

Plaintiff filed an Amended Complaint after he was released from prison. He was not incarcerated at the time the Amended Complaint was filed. The filing of an amended complaint is the "functional equivalent of filing a new complaint." Barnes v. Briley, 420 F.3d 673, 678 (7th Cir. 2005). In Barnes, the court allowed a prisoner to amend his complaint to include claims that were exhausted during the pendency of his suit. Barnes had filed his original complaint *pro se*. Through counsel, he later filed an amended complaint which the court found to be the equivalent of a new complaint. Given this analysis in Barnes, the PLRA's exhaustion requirement no longer applies to the Plaintiff in this case as he was no longer in prison when the Amended Complaint was filed. See Barnes, 420 F.3d at 678; Minix v. Pazera, 2007 WL 4233455, *4 (N.D.Ind. 2007)(not reported) (once the plaintiff was released from custody and amended his complaint, the requirements of the PLRA no longer applied); see also Robbins v. Switzer, 104 F.3d 895 (7th Cir. 1997)(PLRA found not to apply to appeals filed after plaintiff was released from prison).

Relying upon a single Sixth Circuit authority on point, Cox v. Mayer, 332 F.3d 422 (6th Cir. 2003), Defendants do not present a sensible rationale in support of the position that the exhaustion requirement still pertains, even with regard to an amended complaint following Plaintiff's release from prison. Preliminary to analyzing Cox, which relies on Eleventh Circuit precedent interpreting a different section of the PLRA, the law is clear that the exhaustion requirement of §1997e(a) does not apply to a lawsuit on prison conditions initiated subsequent to a prisoner's release. See Greig v. Goord, 169

14

F.3d 165 (2ⁿᵈ Cir. 1999). Thus, the question before this court–one of first impression in this circuit–is whether such a requirement pertains to claims pled in an amended complaint filed subsequent to release, when the plaintiff was incarcerated upon filing his original complaint.

In Minix v. Pazera, 2007 WL 4233455 (N.D.Ind. 2007), the court broadened the Seventh Circuit's earlier decision in Barnes v. Briley, 420 F.3d 673, opining that "once Mr. Zick was released from custody, the PLRA no longer applied, so he sought to amend his complaint. The filing of plaintiffs' amended complaint was the equivalent of filing a new complaint. When he filed the amended complaint, Mr. Zick was no longer incarcerated and so no longer subject to the PLRA requirements." Minix, 2007 WL 4233455 at *5.

In a several decisions from the Southern District of New York, Morris v. Eversley, 205 F.Supp.2d 434 (S.D.N.Y. 2002) ("Morris I"), and Morris v. Eversley, 343 F.Supp.2d 234 (S.D.N.Y. 2004) ("Morris II"), the court first sensibly held failure of exhaustion dismissal not to pertain in the context of post-release amendment (Morris I), and then provided case authorities and analysis supportive of that holding. The court held that "considerations of judicial efficiency and economy advise against dismissal of Morris' claims." Morris I, 205 F.Supp.2d at 241. The same rationale applies here.

## IV.  PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD NOT BE DISMISSED

In Section B of Doc 33, the Individual Defendants argue that Plaintiff's Eighth

Amendment claims in Count I are insufficiently pled, based on the heightened pleading standard. Defendants are wrong.

Under the heightened pleading standard, the plaintiff is required to provide facts with "sufficient detail for Defendants to understand what alleged rights were violated . . . and which of their actions allegedly violated those rights," as well as "for the court to determine whether those facts indeed set our a violation of rights and whether those rights were clearly established when these incidents occurred." Amnesty Int'l, USA v. Battle, 559 F. 3d 1170, 1180 (11th Cir. 2009).

Recently, the Eleventh Circuit addressed the same issue presented *sub judice* in Harper v. Lawrence County, 592 F.3d 1227 (11th Cir. 2010). The Harper court affirmed in pertinent part denial of a motion to dismiss in an inmate deliberate indifference to medical needs case where the pleadings were similar to those at bar.

In Harper, the court analyzed the claims under a two step framework: first, the court is to determine "whether the [defendant's] conduct amounted to a constitutional violation," and second, the court is to "analyze[ ] whether the right violated was 'clearly established' at the time of the violation." Id. at 1233 (quoting Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009)).

"To perform the first step of the qualified immunity analysis, we must determine whether Plaintiff properly stated a 'personal participation' claim for deliberate indifference under the Fourteenth Amendment" against the individual defendants. Id. at 1234. The plaintiff must sufficiently allege "both an objective serious medical need and

that a Defendant acted with deliberate indifference to that need." Id. (quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008). To establish "deliberate indifference," the Plaintiff must demonstrate that the individual defendants "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." Id. He is also required to show that the individual defendants' conduct caused his injuries. Id.

With respect to each Individual Defendant, Plaintiff has alleged the following:

**TORRES:** Torres is a physician employed as Chief Health Official of Wakulla Correctional Institution (WCI). [Amended Complaint, ¶ 9]. Plaintiff communicated his medical condition directly to Torres, including his need for interferon and/or ribavirin. [Amended Complaint, ¶ 17]. Despite such direct communication, Torres administered only lactulose to Plaintiff. [Amended Complaint, ¶ 17]. Torres knew that failure to provide timely treatment or medication would result in serious medical consequences, including death. [Amended Complaint, ¶ 24]. Torres had notice of inadequate custodial, medical, and diagnostic care of Plaintiff [Amended Complaint, ¶ 25]. Torres failed to establish or implement policies to treat Plaintiff's serious condition. [Amended Complaint, ¶ 25]. Torres was deliberately indifferent to, and recklessly disregarded, Plaintiff's medical care. [Amended Complaint, ¶ 27]. Torres deprived Plaintiff of the means of assisting in his own health care. [Amended Complaint, ¶ 27]. Torres failed to provide Plaintiff with necessary health therapies. [Amended Complaint, ¶ 27]. Torres failed to follow-up on Plaintiff's serious health problems. [Amended Complaint, ¶ 27].

Torres failed to timely respond to Plaintiff's medical needs. [Amended Complaint, ¶ 27]. Torres failed to provide Plaintiff with timely and necessary medical care. [Amended Complaint, ¶ 27]. Torres did not permit others to provide Plaintiff with timely and necessary medical care. [Amended Complaint, ¶ 27]. Torres recklessly deviated from reasonably acceptable standards of medical care in failing to provide Plaintiff with necessary medical interventions. [Amended Complaint, ¶ 27]. Torres knew that failure to provide Plaintiff adequate medical care would result in substantial risk to Plaintiff's health, including the risks of death and permanent injury. [Amended Complaint, ¶ 27]. The medical services provide by Torres to Plaintiff were so grossly substandard as to amount to no medical care at all. [Amended Complaint, ¶ 27].

**WAHL:** Wahl is a nurse practitioner employed by the DOC and providing services at HCI . [Amended Complaint, ¶ 11]. Plaintiff communicated his medical condition on multiple occasions directly to Wahl, including his need for interferon and/or ribavirin. [Amended Complaint, ¶ 16]. Despite such direct communication, Wahl administered only lactulose to Plaintiff. [Amended Complaint, ¶ 16]. Wahl knew that failure to provide timely treatment or medication would result in serious medical consequences, including death. [Amended Complaint, ¶ 24]. Wahl had notice of inadequate custodial, medical, and diagnostic care of Plaintiff [Amended Complaint, ¶ 25]. Wahl failed to establish or implement policies to treat Plaintiff's serious condition. [Amended Complaint, ¶ 25]. Wahl was deliberately indifferent to, and recklessly disregarded, Plaintiff's medical care. [Amended Complaint, ¶ 27]. Wahl deprived

Plaintiff of the means of assisting in his own health care. [Amended Complaint, ¶ 27].

Wahl failed to provide Plaintiff with necessary health therapies. [Amended Complaint, ¶

27]. Wahl failed to follow-up on Plaintiff's serious health problems. [Amended

Complaint, ¶ 27]. Wahl failed to timely respond to Plaintiff's medical needs. [Amended

Complaint, ¶ 27]. Wahl failed to provide Plaintiff with timely and necessary medical

care. [Amended Complaint, ¶ 27]. Wahl did not permit others to provide Plaintiff with

timely and necessary medical care. [Amended Complaint, ¶ 27]. Wahl recklessly

deviated from reasonably acceptable standards of medical care in failing to provide

Plaintiff with necessary medical interventions. [Amended Complaint, ¶ 27]. Wahl knew

that failure to provide Plaintiff adequate medical care would result in substantial risk to

Plaintiff's health, including the risks of death and permanent injury. [Amended

Complaint, ¶ 27]. The medical services provide by Wahl to Plaintiff were so grossly

substandard as to amount to no medical care at all. [Amended Complaint, ¶ 27].

**LEMON:** Lemon is a nurse practitioner employed by the DOC and providing

services at WCI . [Amended Complaint, ¶ 12]. Plaintiff communicated his medical

condition directly to Lemon, including his need for interferon and/or ribavirin. [Amended

Complaint, ¶ 17]. Despite such direct communication, Lemon administered only

lactulose to Plaintiff. [Amended Complaint, ¶ 17]. Lemon knew that failure to provide

timely treatment or medication would result in serious medical consequences, including

death. [Amended Complaint, ¶ 24]. Lemon had notice of inadequate custodial, medical,

and diagnostic care of Plaintiff [Amended Complaint, ¶ 25]. Lemon failed to establish or

implement policies to treat Plaintiff's serious condition. [Amended Complaint, ¶ 25].

Lemon was deliberately indifferent to, and recklessly disregarded, Plaintiff's medical

care. [Amended Complaint, ¶ 27]. Lemon deprived Plaintiff of the means of assisting in

his own health care. [Amended Complaint, ¶ 27]. Lemon failed to provide Plaintiff with

necessary health therapies. [Amended Complaint, ¶ 27]. Lemon failed to follow-up on

Plaintiff's serious health problems. [Amended Complaint, ¶ 27]. Lemon failed to timely

respond to Plaintiff's medical needs. [Amended Complaint, ¶ 27]. Lemon failed to

provide Plaintiff with timely and necessary medical care. [Amended Complaint, ¶ 27].

Lemon did not permit others to provide Plaintiff with timely and necessary medical care.

[Amended Complaint, ¶ 27]. Lemon recklessly deviated from reasonably acceptable

standards of medical care in failing to provide Plaintiff with necessary medical

interventions. [Amended Complaint, ¶ 27]. Lemon knew that failure to provide Plaintiff

adequate medical care would result in substantial risk to Plaintiff's health, including the

risks of death and permanent injury. [Amended Complaint, ¶ 27]. The medical services

provide by Lemon to Plaintiff were so grossly substandard as to amount to no medical

care at all. [Amended Complaint, ¶ 27].

Additionally, Loeber's rights were clearly established at the time of the denial of

care. Hepatitis is commonly known to be a serious medical need. <u>Allen v. Burnside</u>,

2007 WL 2904018 (M.D. Ga. 2007). "Courts have defined a 'serious medical need' as

'one that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" Id. (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir.2004); see also

Hill v. DeKalb Regional Youth Development Center, 40 F.3d 1176, 1188 (11th

Cir.1994). The Eleventh Circuit has held that hepatitis specifically meets the definition

of a serious medical need that "if left unattended, poses a substantial risk of serious

harm." Id.

Even where treatment is eventually provided, an inordinate delay in treatment can

constitute deliberate indifference. Whether a delay in treatment is constitutionally

tolerable "depends on the nature of the medical need and the reason for the delay."

Farrow v. West, 320 F.3d 1235, 1247 (11th Cir.2003) (quoting Harris v. Coweta County,

21 F.3d 388, 393-94 (11th Cir.1994)). In Farrow, the defendant prescribed dentures for

the plaintiff, but the plaintiff did not receive the dentures for nearly eighteen months,

during which time the plaintiff suffered bleeding and sore gums, the inability to eat solid

food, and weight loss. Although the Plaintiff in the instant case is not at the point of

offering medical testimony about the effects of the denial of medical care by the

Defendants, his pleadings are nevertheless sufficient to show that the delay/denial

constituted deliberate indifference. Hepatitis is a more serious medical need than the

need for dentures, even in the absence of readily observable symptoms. Allen, 2007 WL

2904018, *4. When the seriousness of the medical condition is combined with the

"recognized need for . . . treatment, . . . the sheer length of the delay involved, and the

lack of any reasonable explanation for the inordinate delay"(see Farrow, 320 F.3d at

1247), it would be reasonable for a jury to conclude that the delay manifested deliberate indifference to Plaintiff's serious medical needs.  <u>Allen</u>, 2007 WL 2904018, *4.

Given the holding of <u>Brown v. Johnson</u>, qualified immunity does not protect the Defendants from liability. Qualified immunity protects public officials from civil liability unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). A right is clearly established if there is existing law that would give the defendant "fair warning" that his conduct would deprive the plaintiff of a constitutional right:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

<u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).

In this case, it is clearly established by Eleventh Circuit precedent that Hepatitis is a serious medical condition and that delay in or denial of treatment can result in serious harm. <u>Brown</u> was published in 2004, three to four years before the denial of medical care in this case.  If the individual defendants are responsible for the delays in and providing no treatment, they had fair warning to know that this delay was in violation of clearly established law.

These allegations meet the heightened pleading requirements as set forth in <u>Harper</u> and show notice to each Defendant of the serious need for medical treatment, a

22

substantial risk of serious harm to Loeber and the failure to take reasonable measures to alleviate that risk and/or disregarded of the risk of serious harm to Loeber. Nothing more is required at this stage.[2]

## VI.  PLAINTIFF'S ADA AND REHABILITATION ACT CLAIMS AGAINST DOC SHOULD NOT BE DISMISSED

Defendants cite a litany of cases in their attempting to convince this Court that neither the ADA nor the Rehabilitation Act are broad enough to cover the Plaintiff's claims in this case. Defendants are wrong.

First as to the ADA, in Kruger v. Jenne, 164 F.Supp.2d 1330 (S.D.Fla. 2000), the court specifically recognized a cognizable ADA claim by an inmate for disability discrimination for failure to make reasonable accommodation. Kruger, 164 F.Supp.2d at 1337-1338.  In his Amended Complaint, Plaintiff specifically articulates accommodations he needed and requested due to his disability: while at WCI, "light duty and frequent rest" in connection with the prison's work detail [Amended Complaint, ¶ 19]; at HCI, active monitoring of his dormitory area to protect him from other inmates, due to his weakened condition arising out of the Hepatitis-C. [Amended Complaint, ¶ 20].

---

[2]       Significantly, Bender v. Regier, 385 F. 3d 1133 (8th Cir. 2004), was decided on a summary judgment motion and not a motion to dismiss. Defendants have argued in the instant case "facts", like those that were argued in Bender, rather than considering whether Plaintiff has met his pleading obligations as set forth in Harper. Arguing the "facts" at this stage is improper.

And in a decision authored just two months ago, the court in <u>Carter v. Georgia</u> <u>Dept. of Corrections</u>, 2010 WL 1931097 (M.D.Ga. 2010), held that the denial of medical treatment to an inmate "'by reason of' his disabilities" constitutes a predicate for a cognizable ADA claim. <u>Carter</u>, 2010 WL 2931097 at *1. Such an allegation is central to the ADA claim pled by Plaintiff: "Defendant DOC's intentional refusal to accommodate the needs of Plaintiff by failing to provide him with the necessary medical care and treatment for his condition and then, on one occasion referenced herein, demanding that Plaintiff work when he was unable to do so, violated the act". [Amended Complaint, ¶ 40]. Plaintiff has further averred that "[i]nstead of accommodating Plaintiff's needs, the DOC denied him services and/or programs available to others that could have treated him. . . Specifically, Plaintiff could have benefitted from therapies and medications to address his serious health condition that rose to the level of a disability." [Id., ¶ 42].

The ADA "unmistakably includes State prisons and prisoners within its coverage." <u>Pennsylvania Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). The Supreme Court has also noted that "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such fundamentals as . . . medical care . . . constitute[s] exclusion from participation in or ... denial of the benefits of the prison's services, programs, or activities." <u>United States v. Georgia</u>, 546 U.S. 151, 157 (2006) (alterations and internal quotation marks omitted). The issue is under what circumstances does the ADA afford a remedy when a plaintiff alleges denial of medical treatment.

Addressing this question, courts have distinguished between claims asserted under the ADA that allege that the medical treatment that a plaintiff received or had access to was inadequate, versus claims alleging that a plaintiff was discriminatorily precluded from access to medical treatment altogether. See, e.g., Buchanan v. Maine, 469 F.3d 158, 174 (1st Cir.2006); Rashad v. Doughty, 4 Fed.Appx. 558, 560 (10th Cir. Jan.29, 2001) (unpublished) (noting that allegations that a disabled prisoner has been denied medical-related services that have been provided to other prisoners may state an ADA claim); Moore v. Prison Health Servs., Inc., 1999 WL 1079848, *1 (10th Cir. 1999) (unpublished table opinion)(holding that the ADA affords "disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities").

Turning to the Amended Complaint filed by Loeber in this case, he alleges that DOC completely denied him access to medical treatment for his disability, Hepatitis-C, and made him engage in activities that he could not perform. These allegations reveal that Loeber has proffered facts that create a plausible inference of discriminatory denial of access to medical care. Taken together, these allegations suffice to plead a claim that he was discriminatorily denied access to medical care in contravention of Title II of the ADA and the Rehabilitation Act by DOC. See Hughes v. Colorado Dept. of Corrections, 594 F.Supp.2d 1226, 1241-42 (D.Colo. 2009).

Accordingly, both Plaintiff's ADA claim and his Rehabilitation Act claims against DOC state legally cognizable causes and should not be dismissed.

## VII.  PLAINTIFF'S STATE LAW NEGLIGENCE CLAIM IN COUNT IV

Plaintiff agrees that this claim should be dismissed based on sovereign immunity under Chapter 768, Florida Statutes.  Although Plaintiff can plead compliance with the presuit notice requirements under §768.28, Florida Statutes, it appears that sovereign immunity bars this claim in this Court.[3]

## VIII.  PLAINTIFF'S REQUESTS FOR INJUNCTIVE AND EQUITABLE RELIEF ARE NOT MOOT

Regrettably, due to his recent repeat incarceration, Plaintiff's requests for injunctive and equitable relief are not moot.

## XI.  ELEVENTH AMENDMENT DAMAGES

Plaintiff does not seek damages against DOC or against Defendants in their official capacities- he is seeking prospective injunctive relief against these Defendants on his Eighth Amendment claims.  There is no bar on damages under the ADA or the Rehabilitation Act against the State, only on his claims brought under §1983.  As such, Plaintiff agrees with Defendants.

## X.  CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

---

[3]  Had DOC removed this case to this Court, the outcome for this claim would likely have been different.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A.  MATTOX, P.A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile:  (850) 383-4801

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing has been furnished to all counsel of record through CM/ECF this 15th day of July, 2010.

/s/ Marie A. Mattox
Marie A. Mattox